IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN NAMY KHANJANI, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3598 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

John Namy Khanjani, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging the punishment phase of his state felony conviction for aggravated assault. Respondent filed a motion for summary judgment (Docket Entry No. 12), to which petitioner responded (Docket Entry No. 13).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this case for the reasons that follow.

## I. PROCEDURAL BACKGROUND

Petitioner was charged with aggravated robbery, but the jury found him guilty of the lesser included offense of aggravated assault on July 6, 2006, in Harris County, Texas. The trial court sentenced petitioner to fourteen years incarceration pursuant to a punishment agreement. The conviction was affirmed on appeal. *Khanjani v. State*, No. 14-06-00690-

CR (Tex. App. – Houston [14th Dist.] 2007, no pet.) (not designated for publication). Petitioner did not pursue discretionary review. The Texas Court of Criminal Appeals denied petitioner's application for state habeas relief without a written order on findings of the trial court without a hearing on November 19, 2008. *Ex parte Khanjani*, No. 70,896-01, at cover.

Petitioner seeks a new punishment hearing under the following grounds for federal habeas relief:

(1)     trial counsel was ineffective in advising petitioner to waive a jury at the punishment phase of trial without adequately investigating the State's extraneous offense evidence;

(2)     the State violated *Brady* during the punishment phase of trial; and

(3)     appellate counsel was ineffective in failing to raise trial counsel's ineffectiveness at the punishment phase of trial.

Respondent argues these grounds fail as a matter of law.

## II.  FACTUAL BACKGROUND

The state appellate court set forth the following statements of facts in its opinion:

Complainant, Salem Tannous, was the owner and operator of Smoke Heaven, a business located on Hillcroft Street in Houston. Smoke Heaven sold smoking accessories, tobacco, and a variety of other products. The complainant's cousin, Raad, was an employee of Smoke Heaven. Appellant and his girlfriend, Laura Wyche, lived in Southwest Houston and visited Smoke Heaven on numerous occasions during the summer of 2005.

Sometime during July of 2005, appellant and Wyche visited Smoke Heaven and Wyche inquired about getting a job there. Raad began flirting with Wyche and asked her for her telephone number. Wyche told appellant that Raad made her uncomfortable, and appellant became angry. Thereafter, Wyche and appellant had an argument in front of Smoke H[e]aven. The complainant intervened and threatened to call the police.

At approximately 11:50 p.m. on August 7, 2005, appellant entered Smoke Heaven carrying a pistol and wearing a mask. Appellant ran to the back of the store and confronted the complainant. Appellant grabbed the complainant and stated, 'You guys, motherf------, you f---ing with my girlfriend.' The two men struggled and appellant shot the complainant three times. When appellant attempted to flee, the complainant chased appellant and tackled him inside the store. Surveillance video from Smoke Heaven, which was admitted into evidence at trial, shows that the complainant removed, or partially removed, appellant's mask during the struggle.

Appellant was indicted for aggravated robbery and pleaded 'not guilty.' The jury found appellant guilty of the lesser offense of aggravated assault, and the trial court sentenced appellant to fourteen years' confinement. Appellant filed a motion for new trial, which was denied.

*Khanjani*, at *1.

## III.  THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally

deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard,

5

unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

In context of sentencing in a non-capital case, a habeas petitioner must demonstrate a reasonable probability that, but for counsel's error, his sentence would have been significantly less harsh. *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993). In considering such a claim, a court should consider the actual sentence, the potential minimum and maximum sentence for the crime, the relative placement of the sentence within the range, and the various mitigating and aggravating factors that were properly considered by the sentencing judge or jury. *Id.* at 88-89.

In the instant case, petitioner states that counsel advised him to waive a jury at the punishment phase of trial because the State intended to introduce extraneous offense evidence that petitioner had robbed and assaulted Wyche three weeks before her grand jury appearance. Counsel told him that, if the jury were to hear that particular evidence, it most likely would assess the maximum punishment of a twenty-year sentence. Petitioner subsequently waived a jury and accepted the State's offer of a fourteen-year sentence. Petitioner argues, however, that, prior to advising him to accept the State's punishment offer, counsel should have discovered the following relevant grand jury testimony of Wyche:

> GRAND JUROR:    Really, did [you and petitioner] have any altercations?
>
> WYCHE:      What do you mean by alter –  (Interrupting.)
>
> GRAND JUROR:    "Fights"?
>
> WYCHE:      We got –
>
> GRAND JUROR:    "Violence"?
>
> WYCHE:      No.  We got in arguments before.

R.R. Vol. 9, Wyche's Grand Jury Testimony, p. 32.  Petitioner construes Wyche's last sentence to mean that "there had never been any violence between her and Khanjani," thereby negating her anticipated extraneous offense testimony.  (Docket Entry No. 1, p. 7-A.)  He contends that, armed with this impeachment evidence, he would have gone to the jury for punishment and received a significantly lower sentence than fourteen years.

To prevail under this habeas ground, petitioner must establish that: (1) counsel failed to discover Wyche's grand jury testimony; that (2) had petitioner been aware of the testimony, he would have elected to have the jury determine punishment; and that (3) having heard the impeachment evidence, the jury would have assessed a punishment significantly less than fourteen years incarceration.

Petitioner's argument is premised on his belief that Wyche's grand jury testimony directly contradicted her claim that petitioner attacked her on March 16, 2006.  A careful review of Wyche's grand jury testimony *in context*, however, reveals that she had been describing her relationship with petitioner as it stood *prior* to their break-up.  Wyche told

7

the grand jury that she terminated her relationship with petitioner a month or so before her grand jury appearance; thus, she and petitioner were no longer dating when the alleged attacked occurred.  Wyche's grand jury statement in context is as follows:

> [GRAND JUROR]: So I'm wondering –
>
> [WYCHE]:    – look back and –
>
> [GRAND JUROR]:– why you can't remember now, whether you have been aware of this for all this time and certainly thought about it.
>
> [WYCHE]:  Well, of course, I've thought about it.  But, you know, [petitioner] and I haven't really, you know, talked that much. *In (sic) our relationship before we broke up was very shaky.* So that wasn't really on my mind.
>
> [GRAND JUROR]: *Really, did y'all have any altercations*?
>
> [WYCHE]:   What do you mean by alter – (Interrupting.)
>
> [GRAND JUROR]: 'Fights'?
>
> [WYCHE]:   We got –
>
> [GRAND JUROR]: 'Violence'?
>
> [WYCHE]:    No.  We got in arguments before.

R.R. Vol. 9, Wyche's Grand Jury Testimony, pp. 31-32, emphasis added.  It is clear from this exchange that Wyche's comment – "In (sic) our relationship *before* we broke up was very shaky" – followed by the grand juror's follow-up question – "Really, did y'all have any altercations?" – shows that they were discussing whether Wyche's shaky relationship with petitioner before they broke up had included physical altercations.  Wyche's answer – "No,

8

we got in arguments before" – made clear that there had been arguments but no physical altercations *during* their dating relationship.  In context of the proceedings as a whole, Wyche's statement, "No.  We got in arguments before," impliedly stated that she and petitioner had no physical altercations "before," with the "before" in her sentence standing as a continuation of her immediately-prior use of the word – "our relationship *before* we broke up."  Because "before" refers to the relationship's termination, not Wyche's grand jury appearance, Wyche's grand jury testimony of April 6, 2006, did not impeach her anticipated extraneous offense testimony regarding petitioner's attack of March 16, 2006.

Indeed, this was the viewpoint espoused by the trial court in speaking with the attorneys at the motion for new trial hearing:

> I don't want to preempt you about this, but I think the context within which this statement was made in front of the Grand Jury was a – you know, during our living relationship together, was there any kind of assaulting behavior. Their living relationship was dissolved.  *This alleged assaultive behavior in March did not occur during the context of their relationship*.  The living relationship, living together, is a totally different deal.

R.R., Vol. 6, p. 65 (emphasis added).  The prosecuting attorneys, who were called as witnesses at the motion for new trial hearing, agreed with that viewpoint:

> DEFENSE COUNSEL:     Were you aware that three weeks after the alleged March 16, 2006 incident, [Wyche] told the Grand Jury that while she and [petitioner] had previously argued, they had never had any altercation[s], violence, or fights?
>
> PROSECUTOR:     It was my understanding that that part of her testimony was while they were dating.  It was my understanding that offense took place when they were not dating.

\*   \*   \*   \*

THE STATE:         Regarding [Wyche's grand jury testimony], what was your understanding of the topic of that conversation between the grand juror and the witness regarding the timing of the violence or not against the witness?

PROSECUTOR:         During the relationship it was normal for me to assume that while they were dating things would have been fine.  It says in there, that before we broke up – and it was talking about while they were in the relationship, and I thought it was dealing with the time that she and [petitioner] were together.

*Id.*, pp. 92, 101.

It bears mention at this juncture that this Court is unable to utilize fully the trial and appellate courts' reviews of the record and counsel's performance for purposes of this issue. On direct appeal, petitioner complained of trial counsel's failure to obtain Wyche's grand jury testimony, but alleged as *Strickland* prejudice his inability to use the grand jury transcript to impeach Wyche on other issues during the guilt-innocence phase of trial. (Appellant's Brief and Reply Brief on Appeal.)  The appellate court rejected his argument. The appellate court was not called upon to determine whether counsel was ineffective in failing to obtain the transcript for purposes of impeaching the anticipated extraneous offense evidence at punishment.  Petitioner raised this latter issue in his state habeas proceeding, but the trial court did not consider the issue separately from petitioner's direct appeal issues, and found that all of his Sixth Amendment claims regarding trial counsel had been raised in, and rejected by, the court of appeals.  *Ex parte Khanjani*, p. 46.  Nevertheless, and as shown

10

above, the record before this Court is sufficient to show that the disputed grand jury testimony, in context of the proceedings as a whole, did not contradict Wyche's anticipated extraneous offense evidence, and is thus sufficient to allow application of the AEDPA standards to the state court's denial of habeas relief.

Petitioner attempts to circumvent the above literal view of Wyche's grand jury testimony by arguing that he and Wyche were actually still dating as of March 16, 2006. As proof, he directs the Court's attention to the following portion of Wyche's grand jury testimony:

> GRAND JUROR:   Have you – has he been by the house?  Your – your apartment?
>
> WYCHE:   Like, recently?
>
> GRAND JUROR:   Uh-huh.
>
> WYCHE:   I don't remember – when was the last time he was at the house –
>
> THE STATE:   You have to speak up.
>
> WYCHE:   He probably came over in – a couple weeks ago.

R.R., Vol. 9, Wyche's Grand Jury Testimony, p. 51.  No further questions were asked regarding the nature of this contact, such as whether it was welcomed or unwanted, and the mere fact of the contact, standing alone, does not constitute probative evidence that petitioner and Wyche were still in a dating relationship as of March 16, 2006.

11

Moreover, petitioner fails to establish a reasonable probability that, had counsel obtained Wyche's grand jury testimony prior to the punishment hearing, he would have allowed the jury to determine his punishment.  At the motion for new trial hearing, the prosecutor testified that, following the reading of the guilty verdict at trial, petitioner had made an outburst in front of the jury and yelled at them.  R.R., Vol. 6, p. 41.  At the punishment hearing, petitioner adamantly and unequivocally stated that he did not want the jury to determine his punishment:

THE COURT: What do you want to do?  You want this jury to decide your punishment or do you want to go ahead and agree to 14 years in prison?

PETITIONER: I'll go ahead and agree.  I have the right to appeal?

THE COURT: You have the right to appeal.

PETITIONER: Yes.

THE COURT: But you're giving up your right to have this jury give you 10 years in prison.

PETITIONER: No. *From what I've seen, these jurors are pretty much – yeah.  No, they are going to give me 20.*

THE COURT: They sure as heck did not find you guilty of aggravated robbery, you know.

PETITIONER: *They could not look me in the eye, okay?*  All right.  Fuck it.  Yes.

THE COURT: I just – I don't want you, five years from now, when you're sitting up there in prison writing me letters like I get every day, gee, I wish I had not agreed to this, but

|  | I did not know I'd be spending this much time up there, because you're getting ready to go to the pen for a long time.  So, I'm just making sure. |
|---|---|
| PETITIONER: | Yes, sir, I understand. |
| THE COURT: | You understand all of the consequences? |
| PETITIONER: | *I don't want to put my lives (sic) in the hands of the jury no longer.*  I'd just like to take what I'm offered. |
| THE COURT: | All right. |

R.R., Vol. 5, pp. 13-14 (emphasis added).  Having lost his temper in open court and lashed out at the jury, it would not be unreasonable for petitioner to want to avoid having that same jury determine his punishment.  Because the record discloses at least one other rational reason for waiving a jury at punishment, petitioner does not establish that, but for counsel's failure to obtain Wyche's grand jury testimony, he would have elected to have the jury determine punishment.

Nor does petitioner show that, had counsel obtained the Wyche grand jury testimony and he elected to have the jury determine punishment, and assuming Wyche testified at punishment that petitioner attacked her on March 16, 2006, the jury would have assessed a significantly less harsh punishment.  In his affidavit submitted to the trial court, trial counsel testified, in relevant part, as follows:

> [T]he State did not disclose to me that, three weeks after Wyche accused
> Khanjani of robbing her at knife point, she told the grand jury that they never
> had any altercations, violence, or fights.  Had the State disclosed this, I would
> have recommended that we attempt to negotiate a lesser sentence and, if
> unsuccessful, allow the jury to assess punishment.

R.R., Vol. 9, DX-2.  As is evident, trial counsel stopped well short of expressing any professional opinion that, had Wyche's grand jury testimony been disclosed, there is a reasonable probability that the jury would have assessed a substantially less harsh penalty than fourteen years incarceration.  The record further shows that the March 2006 assault was not the only anticipated extraneous offense evidence; the State gave notice statutory notice of petitioner's prior offenses for failing to stop and give information; causing bodily injury to two individuals; and fraudulently possessing a controlled substance via a forged or altered prescription.  C.R. at 11.  The Court is further mindful that the record shows petitioner returned to the store, masked and armed, and shot his victim three times for nothing more than his having flirted with Wyche weeks earlier.  Nor can the Court discount the potentially negative effect of petitioner's loss of temper in open court following the jury's guilty verdict.  In short, petitioner does not establish, and the record does not provide, a reasonable probability that, had the jury assessed punishment, petitioner's punishment would have been significantly less harsh than fourteen years incarceration.

The state courts denied petitioner's application for state habeas relief.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable

14

application of *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment on this issue.

## V.   *BRADY* VIOLATION

Petitioner claims that the State's failure to disclose Wyche's grand jury testimony to defense counsel constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  To establish a *Brady* violation, petitioner must establish that (1) the prosecution suppressed the evidence; (2) the evidence was favorable to his defense; (3) the evidence was material to punishment; and that (4) non-discovery of the evidence was not the result of lack of due diligence.  *See Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

Assuming that the protections of *Brady* apply to a punishment hearing involving a negotiated sentence,[1] petitioner here fails to establish that Wyche's allegedly-suppressed grand jury testimony was favorable to his defense and material to punishment.  The Court has already reviewed the record and determined that Wyche's testimony did not contradict her assertion that petitioner assaulted her on March 16, 2006.  The Court also has already determined that petitioner presents no probative summary judgment evidence that he and Wyche were in a dating relationship as of that date.  Accordingly, Wyche's grand jury statement that she and petitioner had no physical or violent altercations during their dating

---

[1] *See*, *e.g.*, *Matthew v. Johnson*, 201 F.3d 353, 361-62 (5th Cir. 2000) (" Because a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge' s or jury' s assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation."); *see also Orman v. Cain*, 228 F.3d 616 (5th Cir. 2000).

15

relationship was not material impeachment evidence relevant to petitioner's punishment hearing, and no *Brady* violation is shown.

The state courts denied petitioner's application for habeas relief.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment on this issue.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner complains in his response to the motion for summary judgment that appellate counsel challenged trial counsel's effectiveness during the guilt-innocence phase of trial, but did not challenge counsel's recommendation that petitioner waive a jury during the punishment phase.  (Docket Entry No. 13, p. 15.)  He argues that, had appellate counsel raised this issue on direct appeal or in a motion for rehearing, there is a reasonable probability that the result of his appeal would have been different.

Because this Court has found that petitioner's ineffective assistance of trial counsel claim is without merit, he cannot show that, but for appellate counsel's failure to raise this argument, there is a reasonable probability that the result of his appeal would have been different.  Appellate counsel is not ineffective in failing to raise futile or groundless arguments on appeal.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

The trial court found that petitioner failed to meet his burden of proof under *Strickland* as to appellate counsel's performance.  *Ex parte Khanjani*, p. 46.  The Texas

16

Court of Criminal Appeals relied on this finding in denying habeas relief.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment on this issue.

### VII.   CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 12) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  A certificate of appealability is **DENIED**.  Any and all pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

SIGNED this 17th day of February 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE